Mr. Alvarez is a native and citizen of El Salvador. He's been in the United States since he was 12, and he was a member of the MS-13 gang from the ages of 17 to 19. The most important point, or one of the most important points of this case, is that in 2000 he was convicted of two charges, Health and Safety Code 11350A and 11351.5, and the issue is whether he qualifies for federal first offender relief. And I believe that under this court's precedent in the bill of Ascensio Rojas v. Lynch, that he should qualify for the relief. And in addition, what I wanted to... He was convicted of possession and of possession for sale, wasn't he? Yes, Your Honor. And the federal first offender statute, as noted by Judge Berzon and her concurrence in that case, notes that prior to the commission of such offense, someone has been convicted of violating a federal estate law related to controlled substances. And that's, I think, the important language, is he's never re-offended after those two convictions that are done on the same day have the same exact sentence. So I believe that he qualifies, based on the text of the statute and based on this court's precedent, that he's eligible for federal first offender relief. Even though he's convicted of trafficking? Well, the case was expunged. Both cases were expunged. So the way the statute is reading, I believe that he should be eligible for the federal first offender relief. Counsel, you don't have a lot of time, and there's one argument I want to have you focus on a little bit. Yes. One of your arguments is that because of your client's tattoos, if he is sent back to his home country, once upon a time his country, the government officials will see those tattoos and torture him. When I read the BIA's order, I did not see the BIA actually address that specific argument. First, is that your contention that the BIA did not discuss that argument? Yes, Your Honor. And that's certainly a question I'm going to have for government counsel. But then the second question I have for you is that was that argument, the tattoos will lead to government torture, effectively, the cat claim, I want to call it. Was that specific argument made to the BIA? To actually look at the BIA brief. If you want to do that, handle that in rebuttal, that's fine. That's a very important question because I didn't see the BIA address it, which would mean normally we would send that back and you'd have another shot. But I think you have to make it to the BIA for us to get to that result. I will check that. It was argued to the IJ, though. Yes, Your Honor. And what I did want to address is this nexus with the harm on the withholding claim. I know government counsel had submitted the 28J letter and noting Barajas Romero. And I believe that the board is simply in error in saying there's no nexus. The respondent's father served in the El Salvadorian military. He was trained by the U.S. government. He changed, the family name was changed to avoid harm to the petitioner. So I don't think that the board is correct in saying that there's no nexus there. In addition, the board says that there's no nexus between the MS-13 membership and the harm he would suffer, which I think is wrong. And the records replete with evidence of people who've been sent back. And one very, very important point is, or two very important points, the respondent was found credible. And he's noted that he provided the name of the killer to the detectives and then was placed in protective custody. It would seem that this would meet the more likely than not standard that he would be persecuted if he were to return to El Salvador. But what is the nexus you mentioned in the first prong of your argument there? With the familial, what's the nexus with harm to him? So because his father was in the El Salvadorian military and was sought after and had to leave El Salvador, he would be harmed as being the son. And it would be a way to get back at his father. But he lived 10 years with his mother after his father left and suffered no harm, changed his name. He did change his name. But here's the point. Now he would be being removed to El Salvador. And he's being removed to a different El Salvador now, a much more violent El Salvador. And he would be coming to the attention of the authorities and gang members having been removed to El Salvador as a MS-13 member. Yes, he lived there as a young child with a changed name. But he would be a much higher profile person going back, and this is likely to come out. The other point that I did want to address concerns the torture. And as you noted, Judge Owens, the both of them. Make sure you're mindful of your time. You did want to reserve some for rebuttal. Okay, yes. Let me just reserve that. Thank you. May it please the Court, Your Honors. My name is Linda Doe, and I represent the respondent, the United States Attorney General. In this immigration case, Petitioner Alvarez is a former MS-13 gang member who has accrued two convictions for controlled substance offenses that render him removal from the United States and ineligible for expungement treatment under the Federal First Offenders Act. Alvarez here, as the judge has noted, that his conviction is for possession for sale. It is a more serious offense than simple possession. It takes it outside the purview of coverage under the FFOA. Additionally, this Court has similarly held and I guess— Well, that was expunged. Yes, Your Honors. Even if expungement under the state still requires it to qualify for treatment under the FFOA. The FFOA provides that—cites to you Section 404 of the Controlled Substance Act, which sets forth simple possession of a controlled substance. This Court has held that possession for sale under this statute constitutes a drug trafficking offense and aggravated felony, which would be more serious. Even if it's been expunged? Yes, Your Honors. Expunged under state. So to warrant under the Federal treatment, it would still have to qualify or be within the purview of the FFOA. Petitioner further contends that the doctrine of adjudicata bars the lodging of the new charges. However, he has not shown that he was subject to a final adjudication on the merits of his claim. Here, DHS timely appealed the IJ's decision. And according to 8 U.S.C. Section 1101A47B, order is not final until the time of appeal has expired or the Board has upheld the IJ's decision. Here, he did not have a final judgment on the merits. And accordingly, the doctrine of adjudicata does not apply. Regarding petitioner's applications for withholding of removal and cat protection, petitioner alleged that he has established a nexus based on his kinship to his father. However, he has not shown that he was harmed or threatened with harm based on that relationship to his father. Additionally, petitioner, his mother, and his siblings were able to reside in El Salvador for a number of years following his father's departure in 1988. And they did not allege that they had been harmed. He says it's a different, more dangerous El Salvador now. What's your response to that? Well, he hasn't shown that anyone's interested in harming him. There's no particularized risk to petitioner. He has not shown that, again, that anyone has threatened him on account of that relationship. So he has not shown that it's more likely than not that he would be persecuted upon his return based on that relationship. Regarding petitioner's membership in his MS-13, his former membership in the MS-13. Why don't you talk about the tattoos? I have the same question to Judge Owen. I understood he addressed to the IJ that because of his gang tattoos, which don't show a date on them, he will be identified both by MS-13 gang members as a former gang member and by the government in the same fashion. And therefore, he is subject to torture and, in fact, death at the hands of either the gang members or the government. I believe that was argued to the IJ. IJ didn't address it. She said, well, she addressed the aging out of his time in the gang and so on. So the VIA didn't address it. They basically affirmed the IJ. So why shouldn't we not remand to the VIA to address those two issues? There is evidence that the government, under the new conditions, would target somebody. First, Petitioner did not raise any argument regarding his tattoos in terms of his decat claim in his opening brief. Therefore, any argument would be deemed waived. Are you saying opening brief to this court or opening brief to the VIA? To this court. Okay. Regarding the IJ's decision, the IJ found no compelling evidence that Petitioner would be tortured upon his return. The IJ noted that, again, there was no particular risk of torture, where he had not shown that anybody had threatened to harm him on account of his former gang membership or his alleged actions as an informant since his release from detention and his defection from the gang in 2001. Therefore, he has not shown that anyone has been interested in targeting him over the last 10 to 15 years. Additionally, Petitioner has submitted evidence that El Salvador enacts manadoro laws. I'm sorry if I mispronounced that. But the manadoro laws advocate for the incarceration of gang members. However, there's no evidence that the government tortures gang members or that they deny them due process of law. Accordingly, substantial evidence in the record supports the agency's decision. And if there are no further questions, Your Honors? Well, what would be adequate evidence for him to have brought forth? He's been here, I think, for a long time. He's had the two convictions and then has had no problems. He's run his own business. He's got all these tattoos. And I would have to say in the contemporary environment, MS-13 certainly is something that has prominence. And if he's a member of MS-13 or a former member, in order to get to the standard you're talking about, he didn't show. How does he show that he's given the record in this case about the countries that are involved and there's a 16-year-old child, MS-13, that was sent back and was murdered two weeks later? What's this individual supposed to show to meet the test you're talking about? Well, for a petitioner to warrant eligibility for withholding a CAD must show that it's more likely than not that he would be harmed upon his return. As the agency noted, he has not shown that anyone has expressed an interest in him in the last 10 to 15 years. He indicated that he lived roughly 45 minutes. There's been a new government since he left, and they have pretty aggressive anti-gang policies, don't they? It would be incumbent upon the petitioner to meet his burden of proof by submitting such evidence that they actually torture or kill their gang members. Well, let me ask you this, Counsel, because on page 33 of Petitioner's Brief to this Court, it says, based on the evidence, it is likely that upon his return, I think it should be to El Salvador, the petition will be questioned by the El Salvador authorities and tortured. That's what it says on page 33. Now, I would agree with you that it's not the most articulately stated in the brief, but why isn't that enough to at least put that issue before this Court? Petitioner doesn't cite to any evidence in the record supporting that claim. But the question is whether the BIA addressed the argument. So we go back to the beginning. The question was he made the argument to the BIA. Maybe it's a lousy argument. Maybe it's a loser. But I don't think the BIA actually addressed it, and so if that's the case, then aren't we obligated then to send it back as long as the issue's been fairly presented to us? I believe that the BIA did address his torture argument in terms of finding that there was, or the IJ, said there was no compelling evidence to show that it is more likely than not that he would be tortured. Not by the government. She found it with regard to the gang-on-gang. She didn't talk about the government. I don't believe. Or if Judge Fischer's incorrect, show us where the IJ did. I don't believe in, like, specifically, I don't believe the IJ specifically broke it down by participants, but it did address his fear. The IJ, at pages 49 and 50, 53 and 54, again, notes that the petitioner hasn't indicated that anyone was interested in harming him based on his former gang membership. But that's different. Again, that's different than what Judge Fischer's talking about. He's talking about how the government has a policy where if they see someone tatted up MS-13, they're going to throw you in a jail and do bad things to you. Where did the IJ or the BIA address that argument? I think the argument was that there was no compelling evidence to show that likelihood of torture. But did they specifically say by the government, as far as you know? Not by the party. Not specific parties. Anything else, or do you want to wrap up? Yes. Because the substantial evidence in this record supports the agency's denial, the government requests that the court deny the petition for review and rest on its brief. Thank you, Counsel. Just around three minutes. So in response to your question, Judge Owens, in the BIA brief itself, at page 25 in the record, it says Mr. Alvarez's gang-related MS-13 tattoos do and will forever brand him as a member of the Mara Salvatrucha gang that he has defected from. So it was addressed to the BIA further on page 36 in the notice of appeal, which is an extensive notice of appeal. There is a discussion of the tattoos as well. So I believe that this was raised to the BIA. Now, in response to — Hold on a second, Counsel. Not to put too fine of a point on it. Right.  The argument was raised, or the concept was raised. Where was it raised in terms of it being a cat claim as opposed to cancellation of removal? Well, it's in the section under — let's see. So on page 21, the argument that you discussed is under cancellation of removal. And then the next page, which is section D, is relief under the convention against torture. And I didn't see the tattoo argument made for the cat claim. I saw it made for cancellation of removal. Maybe ultimately it doesn't matter. Maybe there's authority saying it's in the mix. It's in the mix. But I just wanted to be clear. So, I mean, the BIA brief is perhaps not the best organized. But the way it's set up is it says withholding of removal, and then it goes through the testimony. And then there's a final argument at the end. It would not make sense, particularly, that the tattoos are part of the cancellation of removal argument. It would go only to the withholding and the cat claim. What's the evidence to support the new regime being targeting MS-13? Well, there's a lot of citations in this record. And the other evidence is that the respondent testified credibly and were pursuant to the precedence of this. What's the evidence, counsel? What's the evidence? There may be lots of citations and credibility. What's the evidence to support the premise that the government, new government, is singling out and torturing or killing or endorsing the killing of former members? Thank you. Rather than do that now, counsel, maybe Judge Owen will let you file a citation to the record in response. I would request that. Not new evidence. I understand. Not a new supplement. I would request that opportunity to do so. Sure. It can be a 28-J letter. But as Judge Fischer indicates, this is not a chance to put in articles from Time magazine. This is just to answer the specific question. Okay. I will do that. But I also wanted to point out one other point. Real quick, counsel. And that is in my reply brief at page 21. I did address the tattoos under the torture section, specifically in response to evidence that the IJ had not considered. Thank you very much, counsel. Thank you, Your Honor. Argument in this case is submitted.
judges: Fisher, Owens, Molloy